UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**NETCHOICE, LLC**                                                                     **PLAINTIFF**

v.                                                                       No. 1:24-CV-170-HSO-BWR

**LYNN FITCH, in her official capacity as
Attorney General of Mississippi**                                **DEFENDANT**

---

## MEMORANDUM OF AUTHORITIES SUPPORTING DEFENDANT'S MOTION FOR A STAY PENDING APPEAL

---

      The Attorney General respectfully requests that this Court issue a stay, pending resolution of the Attorney General's forthcoming appeal, of this Court's July 1, 2024 Memorandum Opinion and Order, which preliminarily enjoins the enforcement of the Walker Montgomery Protecting Children Online Act, H.B. 1126 (2024), against plaintiff NetChoice, LLC and its members. Doc. 30 (Op.). This Court granted that preliminary relief based on NetChoice's claims that the Act facially violates the First Amendment by impermissibly regulating protected speech and that the Act is impermissibly vague on its face.

      On appeal, the Attorney General will show that this Court's injunction cannot be squared with the Act's targeted scope, with its focus on (and regulation of) non-expressive conduct of covered online platforms, or with precedent on facial challenges. The Attorney General will also show that the harm to the State from enjoining the Act's enforcement substantially outweighs any harm to NetChoice and its members from complying with the Act. Therefore, the Attorney General requests that the Court stay its order pending resolution of the Attorney General's appeal to the Fifth Circuit. Given the importance of the Act and the interests at stake, the Attorney General respectfully asks this Court to rule on this stay request by July 17, 2024.

# ARGUMENT

This Court should stay its preliminary-injunction order pending resolution of the Attorney General's appeal. In considering whether to grant a stay pending appeal, courts assess: "(1) whether the applicant is likely to succeed on the merits, (2) whether [the applicant] will suffer irreparable injury without a stay, (3) whether the stay will substantially injure the other parties interested in the proceedings, and (4) where the public interest lies." *Ohio v. EPA*, No. 23A349, 603 U.S. —, slip op. 10 (U.S. June 27, 2024). Here, each stay factor supports the requested relief.

Given the Court's familiarity with this case and because the Court rejected the Attorney General's arguments just two days ago, the Attorney General will not recite the factual background and procedural history or repeat each of the arguments opposing an injunction. Instead, the Attorney General incorporates the previously filed opposition to NetChoice's preliminary-injunction motion and will provide a focused discussion for why a stay is warranted. Opp'n (Doc. 26).

## I. The Attorney General Is Likely To Succeed On Appeal.

This Court granted preliminary relief based on NetChoice's claims that the Act violates the First Amendment by impermissibly regulating protected speech and that the Act is impermissibly vague. "Each of NetChoice's claims raises a traditional facial challenge." Complaint ¶ 58 (Doc. 1).

Just two days ago, in a case involving the very same plaintiff, the U.S. Supreme Court reiterated that "facial challenges" are "hard to win"—"even when ... based on the First Amendment." *Moody v. NetChoice, LLC*, No. 22-277, 603 U.S. —, slip op. 9 (U.S. July 1, 2024); *see ibid.* ("NetChoice chose to litigate these cases as facial challenges, and that decision comes at a cost."). "[F]acial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Ibid.* (internal quotation marks omitted). The Supreme Court accordingly emphasized that a party bringing a facial challenge must

ordinarily establish that "'no set of circumstances exists under which the [challenged law] would be valid'" or "show[ ] that the law lacks a 'plainly legitimate sweep.'" *Ibid.* In the First Amendment context, a party bringing a facial challenge must show that the law's "unconstitutional applications substantially outweigh its constitutional ones," in light of "the full range of activities the law[ ] cover[s]." *Id.* at 9, 10. And that showing must start with properly "assess[ing]" the law's "scope." *Id.* at 10. On appeal, the Attorney General will show that NetChoice has fallen far short of meeting the high bar that applies to facial challenges.

On the First Amendment claim, as this Court recognized, "a law may be invalidated" on a facial challenge only if a plaintiff demonstrates that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Op. 18 (quoting *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). On appeal, the Attorney General is likely to succeed in arguing that NetChoice failed to show that the Act's (allegedly) "unconstitutional applications substantially outweigh its constitutional ones." *Moody*, slip op. 9. As the Attorney General has explained (Opp'n 11-13, 17-19), the Act's age-verification, parental-consent, and strategy provisions regulate the non-expressive conduct of covered online platforms, not the content of speech that platforms (or others) offer. Each provision says what a platform "*must do*"—take reasonable steps to mitigate concrete harms to minors—"not what they may or may not say." Opp'n 12 (quoting *Rumsfeld v. FAIR*, 547 U.S. 47, 60 (2006)). Those provisions are accordingly subject to the rational-basis standard that applies to regulations of non-expressive conduct—a standard that each provision easily satisfies. *See* Opp'n 11-13. Even if the challenged provisions did regulate based to some extent on content, they would be subject at most to intermediate scrutiny and would satisfy that standard. The age-verification, parental-consent, and strategy provisions all promote the State's "substantial government interest" in "protecting

3

the physical and psychological well-being of minors" from harmful online conduct commonly perpetrated through the online social-media platforms that the Act covers. Opp'n 19 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989), and *Sable Communications of California, Inc. v. FCC*, 492 U.S. 115, 126 (1989)). And they do so without suppressing substantially more speech than necessary. Opp'n 18-19. The Attorney General understands that the Court concluded that the Act regulates speech based on content and so is subject to strict scrutiny. Op. 16-23. For reasons given above and in the preliminary-injunction opposition, the Attorney General respectfully disagrees with that view and also maintains that the Act satisfies any standard of heightened scrutiny. *See* Opp'n 19-23; *contra* Op. 23-32.

On the void-for-vagueness claim, a facial challenge may succeed only if (as this Court recognized) "the enactment is impermissibly vague in all of its applications." Op. 34 (quoting *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023)). On appeal, the Attorney General is likely to succeed in arguing that NetChoice failed to show that the Act does not "give[ ] a person of ordinary intelligence a reasonable opportunity to know what is prohibited" and "provide[ ] explicit standards for those applying them to avoid arbitrary and discriminatory applications." Opp'n 24 (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008)). The Act uses succinct and straightforward language that is clear about who and what the Act covers. For example, the Act specifically exempts certain service providers that "allow[ ] chat, comment or other interactive functionality that is incidental to" the service's "primar[y] function[ ]." § 3(2)(c)(i)-(ii). NetChoice's members should easily be able to determine whether they fall within this exemption, especially in light of the Act's clear focus on online social-media platforms where minors interact with other users. NetChoice also cannot show that the Act's use of straightforward undefined terms—like "socially interact," "promotes," and "facilitates"—renders it unconstitutionally vague. As the Attorney General has explained (Opp'n 25-27),

4

"[t]here is no constitutional need to define statutory terms that 'are not obscure and are readily understandable by most people.'" Opp'n 25 (quoting *United States v. Beasley*, 2021 WL 96250, at *4 (S.D. Miss. Jan. 11, 2021)). And NetChoice's fantastical hypotheticals about the Act's scope do not establish vagueness: the Act narrowly and clearly targets particular types of harmful online conduct against minors.

**II. The Balance Of Harms And The Public Interest Strongly Favor A Stay.**

The remaining factors—the balance of the equities and the public interest—also strongly support a stay. As the Attorney General has explained (Opp'n 29-30), enjoining a State from "enforc[ing] its duly enacted [law] clearly inflicts irreparable harm." *Abbott v. Perez*, 585 U.S. 579, 603 n.17 (2018); *cf. Moody*, slip op. 9 (facial challenges to state laws "short circuit the democratic process by preventing duly enacted laws from being implemented") (internal quotation marks omitted). If left in place, the injunction will prevent the Attorney General from enforcing the Act in applications that are "plainly legitimate"—including in ways that could help "prevent or mitigate" the "facilitat[ion]" of "trafficking" in children, "sexual exploitation or abuse" of minors, "child pornography," or "suicid[e]," Opp'n 31 (quoting § 6(1))—without any showing by NetChoice that such applications are "substantially outweigh[ed]" by allegedly unconstitutional ones. *Moody*, slip op. 9.

Moreover, NetChoice has never seriously disputed that the Act serves the State's "transcendent interest in protecting the welfare of children." Opp'n 30 (quoting *Ginsberg v. New York*, 390 U.S. 629, 640 (1968)). This Court itself recognized "the seriousness of the issue" the state legislature "attempt[ed] to address" through the Act. Op. 39. And it "accept[ed] as true" the Attorney General's "position that safeguarding the physical and psychological wellbeing of minors online is a compelling interest." Op. 25; *see ibid.* (citing *Sable Communications*, 492 U.S. at 126, for the proposition that "there is a compelling interest in protecting the physical and

psychological well-being of minors"). And just this week, the Supreme Court recognized that "[s]ocial-media platforms" and "other websites" "create ... unprecedented dangers" for the public. *Moody*, slip. op. 2; *see also id.* at 3 (Alito, J., concurring in judgment) ("research suggests that social media are having a devastating effect on many young people, leading to depression, isolation, bullying, and intense pressure to endorse the trend or cause of the day"). If not stayed, the injunction will undermine the State's efforts to protect children from the severe harms described in the Act.

The alleged financial and other harms that NetChoice alleges from the Act's enforcement pale in comparison to the harms to the State and its citizens from the injunction. *See* Opp'n 10, 29-30. And NetChoice's attempt to undermine the value of enforcing the Act depends on a misreading of the law's targeted scope. *See* Opp'n 15-16, 23-27. The Act addresses specific harms to minors that flow from a very particular set of targeted, interactive acts perpetrated online. It should be permitted to take effect pending appeal.

## CONCLUSION

The Court should stay its order granting preliminary relief (Doc. 30) pending resolution of the Attorney General's appeal.

Under Fed. R. App. P. 8(a), a party seeking a stay pending appeal ordinarily must first seek such relief in the district court. The Attorney General therefore respectfully requests that the Court rule on this motion by July 17, 2024, after which the Attorney General plans to seek relief in the Fifth Circuit if this Court does not grant a stay.

**RESPECTFULLY SUBMITTED**, this the 3rd day of July, 2024.

        **LYNN FITCH, in her official capacity as Attorney General of Mississippi,** *Defendant*

        **LYNN FITCH**
        **Attorney General of Mississippi**

        By: */s/ Wilson D. Minor*
        WILSON D. MINOR (MSB #102663)
        C. LEE LOTT (MSB #10605)
        CLAIRE BARKER (MSB #101312)
        Special Assistant Attorneys General
        Mississippi Attorney General's Office
        Civil Litigation Division
        Post Office Box 220
        Jackson, Mississippi 39205-0220
        Telephone: (601) 359-6279
        Email: wilson.minor@ago.ms.gov
               lee.lott@ago.ms.gov
               claire.barker@ago.ms.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the above pleading or other paper with the Clerk of Court using the ECF system which sent notification to all counsel of record.

This, the 3rd day of July, 2024.

*/s/Wilson D. Minor*
Wilson D. Minor
