# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

NETCHOICE, LLC,

*Plaintiff*,

v.

LYNN FITCH, in her official capacity as Attorney General of Mississippi,

*Defendant*.

Civil Action No. 1:24-CV-00170-HSO-BWR

**PLAINTIFF NETCHOICE'S RESPONSE TO
DEFENDANT'S MOTION FOR STAY PENDING APPEAL**

This Court has twice correctly concluded that Mississippi House Bill 1126 ("the Act") violates the First Amendment and it has properly enjoined Defendant's enforcement of the Act against Plaintiff NetChoice's regulated members. ECF 30; 59. Just as this Court denied Defendant's motion for a stay pending appeal last year, ECF 40, NetChoice respectfully requests that the Court deny Defendant's latest stay motion, ECF 61.

Defendant's four-page memorandum, ECF 62, repeats merits arguments that this Court has already twice rejected—along with courts nationwide. *See* ECF 50 at 1-2 (collecting cases). The Act's restrictions on access to speech and its outright calls for censorship do not regulate mere "non-expressive conduct." *See* ECF 59 at 16, 19-20; *contra* ECF 62 at 2. The Act's content-based central coverage definition—exempting state-preferred topics such as "news" and "sports," § 3(2)(c)-(d)—subjects all the Act's speech regulations to strict scrutiny, not rational basis or intermediate scrutiny as Defendant contends. *See* ECF 59 at 17-19; *contra* ECF 62 at 3. And the Act's speech regulations cannot satisfy any form of heightened First Amendment scrutiny, even the intermediate scrutiny that Defendant says would apply. *See* ECF 59 at 20-30; *contra* ECF 62 at 3.

1

Defendant's equitable arguments are similarly baseless. *See* ECF 62 at 3-4. The equities strongly favor maintaining the injunction and preserving access to NetChoice members' covered websites. Nor will the injunction prevent any efforts to safeguard minors online. NetChoice's regulated members are already engaged in extensive content moderation. *See* ECF 50 at 3-4. They also provide tools to parents to oversee their minor children online, supplementing the myriad other tools that parents have. *See* ECF 50 at 3. And the State can enforce its criminal laws. *See* ECF 50 at 20.

The Court should deny Defendant's Motion.

**Argument**

"In deciding whether to issue a stay," courts "ask (1) whether the applicant is likely to succeed on the merits, (2) whether it will suffer irreparable injury without a stay, (3) whether the stay will substantially injure the other parties interested in the proceedings, and (4) where the public interest lies." *Ohio v. EPA*, 603 U.S. 279, 291 (2024). This Court correctly concluded that "NetChoice has shown that all four factors under Rule 65 favor the entry of a preliminary injunction on its as-applied challenge." ECF 59 at 32. For the same four reasons, no stay is warranted.

**I.      Defendant is unlikely to succeed on appeal.**

**A.      Defendant's merits arguments are not likely to succeed on appeal.**

Defendant does not offer any new—let alone persuasive—merits arguments. Instead, Defendant merely notes her "disagree[ment]" with this Court's decision. ECF 62 at 3. These arguments are not likely to succeed on appeal. And Defendant's disagreement is no reason for this Court to stay its order and diverge from the nationwide consensus. *Comput. & Commc'n Indus. Ass'n and NetChoice v. Uthmeier*, 2025 WL 1570007 (N.D. Fla. June 3, 2025) (enjoining state ban on under-14 minors and parental consent for 14- and 15-year-olds to access particular social media websites); *NetChoice, LLC v. Yost*, 2025 WL 1137485 (S.D. Ohio Apr. 16, 2025) (permanently

enjoining parental-consent law); *NetChoice, LLC v. Griffin*, 2025 WL 978607 (W.D. Ark. Mar. 31, 2025) ("*Griffin II*") (permanently enjoining age-verification and parental-consent law); *NetChoice, LLC v. Bonta*, 2025 WL 807961 (N.D. Cal. Mar. 13, 2025) (enjoining broad regulation of online services, including age-estimation requirement); *NetChoice, LLC v. Reyes*, 748 F. Supp. 3d 1105 (D. Utah 2024) (enjoining age-assurance and parental-consent law); *Comput. & Commc'n Indus. Ass'n and NetChoice v. Paxton*, 747 F. Supp. 3d 1011 (W.D. Tex. 2024) ("*CCIA*") (enjoining law requiring filtering and monitoring of certain content-based categories of speech on minors' accounts).

Defendant "understands that the Court concluded that the Act regulates speech based on content, is thus subject to strict scrutiny, and does not satisfy that standard or intermediate scrutiny." ECF 62 at 3. Yet Defendant does not explain why those conclusions are incorrect beyond briefly rehashing the arguments that this Court already rejected. *See* ECF 62 at 2-3. So for the reasons the Court has already analyzed, Defendant's appeal is not likely to succeed, and no stay is warranted.

Defendant first argues that "the Act—including its central age-verification, parental-consent, and strategy provisions—regulates the non-expressive conduct of covered online platforms, not the content of speech that those platforms (or others) offer." ECF 62 at 2. Yet this Court has twice rejected those arguments. ECF 30 at 21-23; ECF 59 at 16, 19-20. So have multiple other courts evaluating similar laws. *E.g.*, *Uthmeier*, 2025 WL 1570007, at *12; *Yost*, 2025 WL 1137485, at *15-16. At bottom, regulating access to—and dissemination of—speech is not regulating mere conduct.

Defendant then argues that the Act is "subject at most to intermediate scrutiny and would satisfy that standard." ECF 62 at 3. Again, this Court has twice correctly concluded that the "Act

3

covers some digital service providers based upon their primary function or the content they convey, while specifically excluding others based upon the nature of the speech they communicate." ECF 59 at 17; *see* ECF 30 at 20-21. That is consistent with judicial decisions nationwide, which have concluded that similar central coverage definitions trigger strict scrutiny. *See, e.g.*, *Yost*, 2025 WL 1137485, at *18-19; *CCIA*, 747 F. Supp. 3d at 1032; *Griffin II*, 2025 WL 978607, at *9-10.

Likewise, this Court correctly concluded that the Act "is either overinclusive or underinclusive, or both, for achieving the State's asserted interest in protecting minors from predatory behavior online." ECF 59 at 27; *see* ECF 30 at 31. In fact, this Court held that the Act's tailoring flaws are so profound that they would fail even intermediate scrutiny. That too is consistent with courts nationwide. *E.g.*, *Uthmeier*, 2025 WL 1570007, at *14-19 (concluding speech restrictions did not satisfy intermediate scrutiny); *NetChoice, LLC v. Griffin*, 2023 WL 5660155, at *16 (W.D. Ark. Aug. 31, 2023) (preliminarily enjoining similar law under intermediate scrutiny, which the court assumed applied).

Defendant is also unlikely to succeed on appeal because she cannot overcome the additional arguments that NetChoice raised but that this Court did not reach (and that Defendant's memorandum does not even address). For example, the Act's monitoring-and-censorship requirements are also preempted by 47 U.S.C. § 230. ECF 50 at 25-27. These and other unaddressed arguments are additional reasons that Defendant's appeal is unlikely to succeed.

## II. The balance of harms and the public interest weigh against a stay.

NetChoice has shown "arguably the most important factor: likelihood of success." *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1099 (5th Cir. 2023). The other factors necessarily follow.

The Act will cause NetChoice's members and their users irreparable harm. "The loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (citation omitted). Defendant does not

4

dispute that "injunctions protecting First Amendment freedoms are *always* in the public interest." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (emphasis added) (citation omitted). Nor does Defendant contest the binding precedent holding that "the State and the public won't be injured by an injunction of a statute that likely violates the First Amendment." *Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024).

Here, the Court's injunction ensures that NetChoice's covered members are not put to the choice of complying with the Act's unconstitutional requirements and incurring unrecoverable compliance costs, or risking steep monetary and criminal penalties. *See* ECF 50 at 27. This injunction also ensures that covered NetChoice members will not stop serving minor users in the State. *See* ECF 50 at 27; ECF 49-1 ¶ 48.

In response, Defendant erroneously says that these factors somehow favor Defendant because NetChoice's (and thus the Court's) contrary analysis "rests on a profound misreading of the Act and its scope." ECF 62 at 4. Because Defendant is wrong about the merits, Defendant is likewise wrong about the equities. *See* ECF 50 at 27; ECF 56 at 8.

Enjoining enforcement of the Act's unconstitutional speech restrictions will not "hinder" the State's—or anyone else's—ability "to protect children." *Contra* ECF 62 at 3-4. NetChoice's members will not cease their content-moderation efforts to address potentially harmful content on their services. *See* ECF 3-3 ¶¶ 6-20; ECF 3-4 ¶¶ 10-14; ECF 3-5 ¶¶ 16-19; ECF 49-1 ¶¶ 10-20; ECF 50 at 3-4. Parents will continue to be able to use the tools available to them to oversee and control their minor children's online activity. *See* ECF 49-1 ¶ 9; ECF 50 at 3-4; ECF 59 at 22. The State will continue to be able to support the "preexisting protections offered by the plaintiffs to assist parents." ECF 59 at 23. And, of course, state and federal law-enforcement authorities will be able to continue investigating and enforcing existing criminal laws. *See* ECF 48 ¶ 191.

Defendant also discounts the compliance costs and difficulties facing NetChoice's covered members, dismissing them as mere "financial . . . harms." ECF 62 at 4. But these are irreparable injuries under binding precedent, and the Act imposes "nonrecoverable" compliance costs. *Ohio v. EPA*, 603 U.S. at 292; *see* ECF 3-3 ¶ 33; ECF 3-4 ¶ 31. What is more, many of the Act's provisions will require covered websites to develop processes that take capital, human resources, and *time*. The undisputed record evidence demonstrates that the two months Mississippi originally gave covered websites to come into compliance was not enough time. And the brief period between the issuance of the Fifth Circuit's appellate mandate and this Court's order on NetChoice's preliminary injunction was also not enough time. As one declarant said, "the Act makes it particularly impossible to make those changes within the necessary timeframe." ECF 3-5 ¶ 9; *see id.* ¶ 37.

## Conclusion

The Court should deny Defendant's Motion for a Stay Pending Appeal.

Dated: June 24, 2025

Jared B. Magnuson*
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305
(512) 693-8350
jared@lkcfirm.com

Joshua P. Morrow*
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
(512) 693-8350
josh@lkcfirm.com

Respectfully submitted,

*/s/ J. William Manuel*
J. William Manuel (MBN 9891)
Stephen L. Thomas (MBN 8309)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 E. Capitol Street, Suite 1000
Jackson, MS 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
wmanuel@bradley.com
sthomas@bradley.com

Steven P. Lehotsky*
Scott A. Keller*
Jeremy Evan Maltz*
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW, Suite 700
Washington, DC 20001
(512) 693-8350
steve@lkcfirm.com
scott@lkcfirm.com
jeremy@lkcfirm.com

*admitted pro hac vice*

*Attorneys for Plaintiff NetChoice, LLC*

**Certificate of Service**

I hereby certify that on June 24, 2025, a true and correct copy of the foregoing Response was electronically filed with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ J. William Manuel*
J. William Manuel (MBN 9891)